1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRESNO MOTORS, LLC, a California limited liability company, | ) ) ) | 1:10cv012 AWI DLB |
| | ) ) | FINDINGS AND RECOMMENDATIONS REGARDING PETITION TO COMPEL ARBITRATION |
| Petitioner, | ) ) | |
| v. | ) ) | (Documents 1 & 5) |
| MERCEDES-BENZ USA, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Respondent. | ) ) ) ) | |
| _____ | ) | |

On December 31, 2009, Petitioner Fresno Motors, LLC ("Fresno Motors") filed the instant Petition to Compel Arbitration. On January 11, 2010, Fresno Motors filed a Notice of Hearing on Petition to Compel Arbitration. On February 1, 2010, Respondent Mercedes-Benz USA, LLC ("MBUSA") filed its opposition to the petition. On February 5, 2010, Fresno Motors filed a reply.

On February 17, 2010, the Court determined the matter was suitable for decision without oral argument pursuant to Local Rule 230(g). The hearing scheduled for February 19, 2010, was vacated and the matter was deemed submitted for written findings. On March 3, 2010, the matter

1

1  was reassigned to the undersigned Magistrate Judge for decision.[1]

2  **FACTUAL BACKGROUND**

3  On March 27, 2009, Asbury Fresno Imports, LLC ("Asbury") entered into an Asset

4  Purchase Agreement ("APA") with Selma Motors to sell its assets in Mercedes-Benz of Fresno, a

5  local Mercedes-Benz dealership.  Selma Motors then assigned its rights under the APA to Fresno

6  Motors.  The APA was contingent upon MBUSA's approval of Fresno Motors as its new dealer.

7  Pursuant to a Passenger Car Dealer Agreement ("PCDA") between Asbury and MBUSA,

8  MBUSA has a contractual right of first refusal or option to purchase assets, which supersedes the

9  dealer's right to transfer interest or ownership of the dealership.  Exhibit A to Opposition, pp.21-

10 23.  If MBUSA exercises its right of first refusal, it "then replaces the original buyer as the

11 contract party with the selling dealer."  Exhibit A to Opposition, p. 22; Opposition, p. 4.

12 On or about June 15, 2009, MBUSA exercised its right of first refusal under its PCDA

13 with Asbury.  Exhibit B to Opposition; Declaration of Mark H. Kelly ("Kelly Dec.") ¶¶ 3-4.  On

14 June 19, 2009, MBUSA and Asbury entered into an Acknowledgment of an Agreement with

15 Respect to Exercise of Right of First Refusal ("Acknowledgment").  Exhibit 2 to Petition.

16 Pursuant to the Acknowledgment, MBUSA agreed to be bound by the APA as if it were the

17 original buyer of Asbury's dealership assets.  MBUSA also made certain representations in the

18 event it assigned its rights.

19 Thereafter, Fresno Motors objected to MBUSA's exercise of its right of first refusal as

20 untimely and unlawful.  To resolve the dispute, MBUSA voluntarily participated in mediation

21 with Fresno Motors on July 30, 2009.  As a result of mediation, MBUSA agreed to assign its

22 rights under the APA to Fresno Motors provided that Fresno Motors met several conditions.

23 Exhibit C to Opposition; Declaration of Gwen Young ("Young Dec.") ¶ 3.  As one condition,

24 Fresno Motors agreed to enter into a written assignment and assumption agreement "by which

25 _____

26 [1] The Court carefully reviewed and considered all of the pleadings, including arguments, points and
authorities, declarations, and exhibits.  Any omission of a reference to an argument or pleading is not to be construed
27 that this Court did not consider the argument or pleading.

28                                        2

1  MBUSA will convey its interest under exercise of its [right of first refusal] to Fresno Motors as

2  assignee; Fresno Motors will then close with Asbury as the buyer."  Exhibit C to Opposition.

3  Counsel for the parties prepared a draft assignment and assumption agreement, but Fresno

4  Motors reportedly refused to sign the agreement.  Exhibit D to Opposition; Kelly Dec. ¶ 5.

5      At some point, negotiations on an acceptable asset purchase agreement between Fresno

6  Motors and Asbury broke down.  Fresno Motors asserts that MBUSA "refused to follow through

7  on its prior promises and agreements" and this, in turn, prompted Asbury to demand "significant

8  concessions from Fresno Motors that materially differed from the terms of the APA."  Petition ¶

9  14.  When Fresno Motors refused to accept the concessions, Asbury terminated the APA and all

10  related agreements and negotiations.  Petition ¶ 14.

11      On December 9, 2009, Fresno Motors initiated arbitration proceedings against Asbury

12  and MBUSA.  Asbury submitted to arbitration.  MBUSA has refused or declined to participate in

13  arbitration.

14      On December 31, 2009, Fresno Motors filed the instant petition pursuant to the Federal

15  Arbitration Act to compel MBUSA to submit to arbitration.

16                                    **DISCUSSION**

17  A.    Federal Arbitration Act

18      Fresno Motors and MBUSA agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1

19  et seq., governs this dispute.  In relevant part, the FAA provides:

20      A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate
       under a written agreement for arbitration may petition any United States district
21      court which, save for such agreement, would have jurisdiction under Title 28, in a
       civil action or in admiralty of the subject matter of a suit arising out of the
22      controversy between the parties, for an order directing that such arbitration
       proceed in the manner provided for in such agreement. . . .The court shall hear the
23      parties, and upon being satisfied that the making of the agreement for arbitration
       or the failure to comply therewith is not in issue, the court shall make an order
24      directing the parties to proceed to arbitration in accordance with the terms of the
       agreement. . . .
25
26  9 U.S.C. § 4.

27      The FAA creates "a body of federal substantive law of arbitrability."  Moses H. Cone

28                                         3

1   Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983).  It is applicable in both state and

2   federal courts.  Thus, unless the agreement provides otherwise, all questions regarding

3   interpretation of arbitration agreements are determined by federal standards.  Buckeye Check

4   Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006); Moses H. Cone Mem. Hosp., 460 U.S. at

5   22-24.  Any question concerning arbitrability must be addressed with a healthy regard for the

6   federal policy favoring arbitration.  Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir.

7   1999).

8         "[A]rbitration is a matter of contract and a party cannot be required to submit to

9   arbitration any dispute which he has not agreed so to submit."  AT & T Techs., Inc. v. Commc'ns

10  Workers of America, 475 U.S. 643, 648 (1986) (citations omitted); Three Valleys Mun. Water

11  Dist. v. E.F. Hutton & Co., Inc.,  925 F.2d 1136, 1139 (9th Cir. 1991).  As with any contract, the

12  parties' intentions control.  Three Valleys Mun. Water Dist., 925 F.2d at 1139.  However, the

13  parties' intentions are generously construed to issues of arbitrability.  Mitsubishi Motors Corp. v.

14  Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

15        The FAA "leaves no place for the exercise of discretion by a district court, but instead

16  mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which

17  an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213,

18  218 (1985) (emphasis in original).  The court's role is limited to determining: "(1) whether a valid

19  agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at

20  issue."  Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2001).  If

21  both questions are answered in the affirmative, then the FAA requires the court to enforce

22  arbitration.  *Id.*

23  B.    Analysis

24        1.    Agreement to Arbitrate

25        Fresno Motors and MBUSA agree that the APA obligates the "parties" to that agreement

26  to submit disputes arising out of or related to the APA to arbitration.

27

28                                            4

1    Section 11.03 of the APA agreement provides:

2    <u>Alternative Dispute Resolution</u>.  In the event of any controversy arising out of or
relating to this Agreement or the Purchase documents, the parties shall first use
3    their diligent and good faith efforts to resolve the dispute.  If such dispute
resolution efforts are unsuccessful, the parties to this Agreement agree to
4    participate in non-binding mediation. . . .  If the mediation is unsuccessful after
thirty (30) days, the dispute shall be submitted to binding arbitration in accordance
5    with the rules of the Uniform Arbitration Act. . . .  During any dispute under this
Agreement, the parties shall continue to fulfill their respective obligations under
6    this Agreement, unless the subject matter of the dispute is of such a nature that
this is by no means possible until the dispute has been fully settled.
7    Notwithstanding the foregoing, the parties acknowledge and agree that neither
party shall be bound by the terms of this <u>Section 11.03</u> if such party seeks an
8    injunctive relief against any other party pursuant to <u>Section 9.03</u> above.

9    Exhibit 1 to Petition.

10          MBUSA contends that by exercise of it right of first refusal, it is a party to the APA and

11   is subject to the APA's arbitration provision.  Fresno Motors disputes whether MBUSA timely

12   exercised its right of first refusal.  However, based on MBUSA's contention that it is a "party" to

13   the APA, Fresno Motors argues that MBUSA must submit to arbitration.  MBUSA counters that

14   the APA obligates it to arbitrate with Asbury, not Fresno Motors, and there is no agreement to

15   arbitrate between MBUSA and Fresno Motors.

16          Here, neither Fresno Motors nor MBUSA was a party or signatory of the original APA.

17   Selma Motors assigned its rights as buyer under the APA to Fresno Motors.  However, MBUSA

18   exercised its right of first refusal pursuant to its PCDA with Asbury.

19          A proper exercise of the right of first refusal would enable MBUSA to assume the buyer's

20   rights and obligations under the APA.  Exhibit A to Opposition, p. 22.  The Acknowledgment

21   confirms "that by its exercise of its right of first refusal, [MBUSA] will be subject to the same

22   terms and conditions under the Fresno Motors APA as such terms and conditions apply to Fresno

23   Motors. . . ."  Exhibit 2 to Petition, ¶ 1.  The Acknowledgment further provides that MBUSA

24   "will continue to be bound by the terms and conditions under the Fresno Motors APA as if it

25   were an original party to same as a buyer. . . ."  Exhibit 2 to Petition, ¶ 2.

26          Thus, MBUSA purportedly stepped into the shoes of Fresno Motors as buyer of Asbury's

27

28                                        5

assets.  By so doing, MBUSA became the sole buyer and there were no obligations flowing between MBUSA and Fresno Motors under the APA.  Instead, MBUSA agreed to arbitrate any dispute it may have with Asbury, not with Fresno Motors.  See AT & T Techs., Inc., 475 U.S. at 648; see also Crowley Mar. Corp. v. Boston Old Colony Ins. Co., 158 Cal.App.4th 1061, 1069, 70 Cal.Rptr.3d 605, 611 (2008) ("The public policy favoring arbitration does not apply to disputes the parties have not agreed to arbitrate.").  Although MBUSA subsequently agreed to assign its rights under the APA to Fresno Motors, an assignment agreement was not signed and the assignment never occurred.  As there is no valid agreement to arbitrate between MBUSA and Fresno Motors, it is RECOMMENDED that the petition to compel arbitration on this basis be DENIED.

   2.  Alternative Theories

   Fresno Motors asserts that even if MBUSA is not a signatory to the APA, it should be equitably estopped from refusing to submit to arbitration because it sought the direct benefits of the APA.  In Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042 (9th Cir. 2009), the Ninth Circuit explained that "[g]eneral contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories.  Among these principles are 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Id. at 1045 (internal citations and quotations omitted).  "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."  Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (internal quotations and citation omitted).  In the arbitration context, equitable estoppel has generated two lines of cases:

> Under the first of these lines, *nonsignatories* have been held to arbitration clauses where the nonsignatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." Under the second line of cases, *signatories* have been required to arbitrate claims brought by nonsignatories "at the nonsignatory's insistence because of the close relationship between the entities involved."

Id. at 1101 (internal citations omitted).

1      The first line of cases does not assist Fresno Motors.  Although MBUSA originally was a

2 nonsignatory to the APA, its effort to step into the shoes of a signatory buyer subjected it to the

3 terms of the APA as to the seller, Asbury.  If a dispute related to the APA arose between Asbury

4 and MBUSA, then MBUSA would be estopped from asserting that its lack of signature on the

5 APA precluded enforcement of the arbitration clause.

6      The second line of cases also does not assist Fresno Motors.  There is no evidence of a

7 "close relationship" between MBUSA and Fresno Motors.  A prospective buyer and subsequent

8 buyer are unlike an agency, spousal, parent-child or general-limited partner relationship.  <u>See</u>,

9 <u>e.g.</u>, Crowley Mar. Corp., 158 Cal.App.4th at 1070.  There also is no evidence of a "close

10 relationship" between Asbury and Fresno Motors.  <u>Id</u>.

11      Fresno Motors further argues that the claims it intends to assert against MBUSA are

12 closely intertwined with the claims that it will pursue against Asbury in the arbitration.  "Claims

13 are intertwined where the merits of an issue between the parties is bound up with a contract

14 binding one party and containing an arbitration clause." Bimota SPA v. Rousseau, 628 F.Supp.2d

15 500, 504 (S.D.N.Y. 2009) (internal quotations and citations omitted).  Fresno Motors explains

16 that it seeks specific performance of the APA against Asbury, which will require proof that

17 MBUSA consented or approved Fresno Motors to become a Mercedes dealer.  Fresno Motors

18 argues that this overlaps with its claims against MBUSA for intentional interference with

19 existing contracts and prospective business relationship, which will rest on Fresno Motors'

20 contention that MBUSA's right of first refusal had expired and was improper.

21      Here, the merits of MBUSA's exercise of its right of first refusal is not "bound up" in the

22 APA that contains an arbitration clause.  The timeliness or tardiness of MBUSA's exercise of its

23 right of first refusal arises under the PCDA with Asbury and California Vehicle Code

24 ¶11713.3(d)(2)(A) and (B).  While the Court acknowledges, as do the parties in their pleadings,

25 that its determination here does not reach the merits of the underlying dispute, it can be said that

26 the dispute between Fresno Motors and MBUSA concerns a matter outside of the APA.

27

28                       7

To the extent that Fresno Motors alternatively intends to argue that its negotiations with Asbury ended because MBUSA broke its promise to give Asbury an unconditional guaranty on a sublease, this argument is not helpful to Fresno Motors.  Any representations by MBUSA regarding a guaranty were made in the Acknowledgment, which would require Fresno Motors to give effect to MBUSA's right of first refusal and its role as buyer in the APA.  However, there was no subsequent agreement assigning MBUSA's rights in the APA to Fresno Motors.  As such, Fresno Motors would not be a third party beneficiary with the right to enforce the arbitration agreement.

Accordingly, it is RECOMMENDED that the petition to compel arbitration also be DENIED on this basis.

**RECOMMENDATION**

Based on the above, this Court hereby recommends that Fresno Motors' petition to compel MBUSA to arbitration be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The District Judge will then review these findings and recommendations pursuant to 28 U.S.C. § 636(b)(1).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __March 19, 2010__        _____/s/ **Dennis L. Beck**_____
                                   UNITED STATES MAGISTRATE JUDGE

8